IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

**FINANCIAL INFORMATION**
**TECHNOLOGIES, INC.,**

    **Plaintiff,**

**vs.**                                                          CASE NO. _____

**MARK LOPEZ,**

    **Defendant.**
_____/

## COMPLAINT

**COMES NOW** plaintiff Financial Information Technologies, Inc. ("Fintech") and files this complaint against defendant Mark Lopez ("Lopez"), and alleges as follows:

### JURISDICTION, VENUE AND PARTIES

1.    Fintech, is a Florida corporation with its principal place of business located in Tampa, Florida, which is in Hillsborough County. Fintech is the leader in providing electronic data and payments to the alcohol industry. Fintech's electronic funds transfer ("EFT") services produce a cash equivalent for payment for beer, wine, and spirits. The Fintech system revolutionized the beverage alcohol data and payment process for distributors across the country. Working with more than 2,400 distributors, Fintech processes beverage alcohol invoices totaling more than $23 billion annually. Through electronic payment and data reporting, Fintech's system increases security, ensures compliance with beverage alcohol regulations, and makes beverage alcohol payments more convenient.

2. Lopez is an individual and a resident of Pasco County, Florida. Lopez is a former employee and independent contractor of Fintech. During the period he was employed or engaged by Fintech, Lopez worked at Fintech's Tampa, Florida facility.

3. This is an action in which Fintech seeks damages in excess of $15,000.00, exclusive of interest, attorneys' fees and costs, as well as injunctive relief. Accordingly, this Court has jurisdiction over this matter.

4. Venue is proper in the Thirteenth Judicial Circuit in and for Hillsborough, County, Florida, pursuant to Section 8 of the February 2000 and September 2009 Fintech Confidentiality and Non-Compete Agreements signed by Lopez, attached hereto as Exhibit Nos. 1 and 2, respectively. Section 8 of these agreements provides that venue shall be proper in Hillsborough County, Florida.

## GENERAL ALLEGATIONS

5. This action arises from Lopez's misappropriation of Fintech's confidential business information and trade secrets and from his breaches of his Confidentiality and Non-Compete Agreements with Fintech, as well as Lopez's other unfair and unlawful competitive practices.

### A. Fintech's Protectable Interests

6. Fintech is in its twenty-fifth year of providing electronic data and payments to the beverage alcohol industry. Given Fintech's established market leadership position, Fintech has both substantial goodwill and important business relationships with its customers. Through the expenditure of its time and resources, Fintech has developed large quantities of confidential and proprietary information and trade secrets that it uses daily to serve its customers. This information includes, among other things,

proprietary software applications, server infrastructure, its business model and pricing structure, as well as valuable compilations and information regarding customers and prospective customers, including customer contact information, customer preferences and needs, and customer rates.

7. An extremely valuable segment of Fintech's confidential and proprietary information is its EFT, which automates the beverage alcohol data and payment process for distributors across the country, other proprietary software applications that automate other functions for customers in the beverage alcohol industry, as well as Fintech's compilations of key contact information and other proprietary, customer-specific information regarding Fintech's customers ("Customer Information"). This information constitutes Fintech's confidential business information and trade secrets.

8. Fintech has devoted substantial time, financial, and other resources, and engaged in extensive sales and marketing efforts to develop these applications and cultivate its Customer Information. Fintech has also devoted substantial time and financial resources to training its workforce, including its systems analysts, engineers, contractors, and executives.

9. Fintech has engaged in efforts that are reasonable under the circumstances to maintain the confidentiality, secrecy, and proprietary nature of its confidential business information and trade secrets, including, but not limited to, its EFT System, proprietary applications, and Customer Information.

10. Among other things, Fintech requires employees and independent contractors to sign a Confidentiality and Non-Compete Agreement, pursuant to which employees and contractors agree to maintain the confidentiality of Fintech's confidential

business information, some of which constitute trade secrets, not only during the term of their employment or engagement with Fintech and thereafter.

**B.   Lopez's Employment With Fintech**

11.   In January 2000, Fintech hired Lopez as a systems analyst. In that capacity, Lopez's duties and responsibilities included developing and maintaining Fintech's proprietary customer applications, including its EFT System. Lopez resigned from Fintech in May 2002.

12.   In 2009, Lopez returned to Fintech as a contractor who worked with the sales department. In that capacity, Lopez gained access to Fintech's confidential Customer Information, business model, pricing structure, as well as information about Fintech's proprietary software applications. Lopez executed a Confidentiality and Non-Compete Agreement, attached as Exhibit No. 1, and a Consulting Agreement, attached as Exhibit No. 2, which contained the following provisions:

> 2. Proprietary interest: prohibited acts. (a) The Contractor hereby acknowledges that the Confidential Information obtained by the Contractor with regard to the Company (or its affiliates, Contractors, principals, clients, or business associates) during the course of the Contractor's engagement, and not generally known in the public domain, constitutes valuable, special, and unique proprietary assets of the Company's business. The Contractor agrees that during the term of the Contractor's engagement, and following termination of the Contractor's engagement, whether the Contractor's termination is voluntary or involuntary, or with or without cause, the Contractor will not at any time, directly or indirectly, disclose, disseminate, or publish any Confidential Information, or the nature of any discussions or communications between the Company and the Contractor, to or for any other person or entity, or utilize the Confidential Information for any reason or purpose other than (i) for the benefit and at the request of the Company, (ii) as may be required by law, or (iii) in connection with obtaining advice from the Contractor's legal counsel.

*See* Ex. No. 1, Section 2.

> In the course of providing services to Fintech, you will have or continue to have access to certain proprietary and confidential information regarding the business of Fintech and its business relationships, including without limitation, information regarding strategic, marketing, or operational plans; unique methods, processes and procedures for the provision of EFT Services; information concerning the identities, relationships, needs, background, requirements and history of customers (including both retailers and wholesalers/distributors); Fintech's internal structure; information regarding Fintech or its affiliates' financial position, financial data and financial affairs; management, executives, officers, directors or personnel of Fintech or its affiliates and their compensation; and new business ventures and potential market affiliations. (All of the foregoing shall hereafter be referred to as "Confidential Information"). You acknowledge and agree that you either have acquired or will acquire said Confidential Information under circumstances giving rise to a duty to maintain its secrecy and/or limit its use to the benefit of Fintech. You will ensure that you will not, directly or indirectly, use, transmit or disclose to any person, concern or entity, any of Fintech's Confidential Information for any purpose which would harm Fintech's business or create a competitive disadvantage to Fintech. *This confidentiality provision survives the termination of this agreement.*

*See* Ex. No. 2, p. 2. Hereinafter, Lopez's 2009 agreements with Fintech shall be referred to collectively as "the Agreements."

13. In April 2010, Lopez became Fintech's Vice President of Operations as a W-2 employee. As Vice President of Operations, Lopez's duties and responsibilities initially included managing the activities of the activation department, overseeing the processes by which Fintech onboarded and installed new customers, and managing the customer support department, which, among other responsibilities, processes the payment files sent to Fintech's banking partners. Subsequently, Lopez became manager of the entire technology department.

14. In those roles, Lopez had access to every aspect of Fintech's trade secrets and confidential business information, customer Information, proprietary software applications, and Fintech's data and payment services for the beverage alcohol industry. Lopez has intimate knowledge of, and was directly involved in, the development of Fintech's database, computer systems, proprietary software applications, server infrastructure, business model, and customer information and pricing structure.

15. Pursuant to the terms of the Agreements, Lopez acknowledged and agreed that during his term of service with Fintech, he would learn confidential business information, as well as trade secrets, which were subject to the confidentiality and non-disclosure provision in the Agreements.

16. Lopez also acknowledged and agreed that the confidentiality and non-disclosure provisions of the Agreements survived the end of each of his terms of employment or engagement.

17. Lopez also acknowledged and agreed that Fintech invested considerable effort, knowledge, time and expense in developing and maintaining its confidential business information and trade secrets; that Fintech has made reasonable efforts to protect the confidentiality of the information; that some or all of the confidential and proprietary information qualifies as trade secrets under *Fla. Stat.* §688.002(4), including, but not limited to, its EFT, automated payment, credit identification, and reconciliation systems, as well as its data analytics systems, some or all of which Lopez had a role in developing; and that Fintech developed substantial relationships with specific prospective and existing customers, vendors, suppliers, employees, independent

contractors, referral sources and other professional contacts, some or all of which were disclosed to Lopez during his employment and engagement with Fintech.

18. The Agreements between Fintech and Lopez are necessary and reasonable to protect Fintech's legitimate business interests, including its customer goodwill, customer relationships, and confidential business information and trade secrets.

C. **Defendant's Unlawful Conduct**

19. Lopez separated his employment from Fintech in May 2012.

20. From March 2015 to the present, Lopez has been employed by iControl Systems, USA, LLC ("iControl") as its Executive Vice President of Operations. iControl was formed in 2005 to provide scan-based trading systems. More recently, with the assistance of Lopez, iControl has expanded into the area of EFT payment transactions for the beverage alcohol industry and has begun soliciting Fintech customers to abandon Fintech and engage iControl to perform services previously performed by Fintech.

21. In his capacity as Executive Vice President for iControl, Lopez has misappropriated, disclosed, and used for the benefit of iControl, Fintech's confidential business information and trade secrets, including but not limited to Fintech's data and payment services for the beverage alcohol industry, other proprietary software applications and business information, server infrastructure, business model, pricing structure, and customer information.

22. In addition, Lopez has conspired with other employees of iControl to disseminate false and disparaging statements about Fintech to Fintech's customers and

prospective customers, including knowingly false statements about the capabilities and pricing structure of Fintech's software solutions and services.

23.     Lopez's actions as described above violate the provisions contained in the Agreements.  His actions further constitute unfair competition and propose a significant threat of unlawful disclosure and use of Fintech's confidential business information and trade secrets.  Lopez's acts impose an imminent threat of irreparable injury to Fintech.

24.     Fintech has no adequate remedy at law for such injuries.  Fintech's full damages are not fully ascertainable at the present, nor can they be readily calculated with reasonable certainty in the future, but they will be substantial.

25.     The injury that will befall Fintech if Lopez is not enjoined outweighs any harm that the issuance of an injunction may inflict on Lopez.

26.     The issuance of an injunction as requested herein will in all respects serve the public good in that it will promote adherence to contractual obligations that involve or are voluntarily undertaken and will prevent a Florida-based business from being victimized by unfair and unlawful competition.

27.     All conditions precedent to the relief requested herein have been met, have occurred, or have been waived.

28.     As a result of the unlawful acts of Lopez, Fintech has retained the undersigned counsel and is obligated to pay them a reasonable attorneys' fee.

## COUNT I

### BREACH OF CONTRACT

29.     Fintech realleges and incorporates herein by reference the allegations contained in Paragraph Nos. 1 through 28 above as if set forth fully herein.

30. Lopez entered into the Agreements with Fintech, described above, in which he agreed not to disclose Fintech's trade secrets and confidential business formation and Customer Information.

31. Pursuant to the terms of the Agreements, after Lopez separated from Fintech, he had a continuing duty to abide by the confidentiality and Non-disclosure provisions. Thus, he had a contractual obligation not to use or disclose the trade secrets and confidential business information and Customer Information he learned while employed or engaged by Fintech for the benefit of his new employer, iControl.

32. As discussed above, during the course of his employment with iControl, Lopez has used and disclosed Fintech's confidential business information and Customer Information and trade secrets for the benefit of iControl.

33. The actions in which Lopez has engaged while employed by iControl constitute violations of the Agreements.

34. If not enjoined, Lopez's violations will cause immediate, substantial, permanent, and irreparable harm to Fintech, which cannot adequately be compensated by monetary damages.

35. The potential for harm to Fintech by Lopez's wrongful conduct substantially outweighs any harm that might accrue to Lopez by virtue of an injunction.

**WHEREFORE,** Fintech demands judgment against Lopez as follows:

(a) Temporarily and permanently enjoining Lopez from using or disclosing any of Fintech's confidential business information or trade secrets;

(b) Awarding Fintech compensatory damages in an amount to be proven at trial;

(c)  Awarding Fintech its attorneys' fees and costs and interest; and

(d)  Granting such other relief as the Court deems just and proper.

## COUNT II

## FLORIDA UNIFORM TRADE SECRETS ACT

36. Fintech realleges and incorporates herein by reference the allegations contained in Paragraph Nos. 1 through 28 above as if set forth fully herein.

37. This is an action for damages and injunctive relief under the Florida Uniform Trade Secrets Act ("FUTSA"), *Fla. Stat.* Ch. 688.

38. Lopez, through his employment and engagement with Fintech, had access to and acquired information of Fintech that constitutes "trade secrets" within the meaning of the FUTSA. Fintech's trade secret information includes, without limitation, information concerning Fintech's customers, Fintech's computer systems and proprietary software applications, pricing structures, and other proprietary information of substantial commercial value developed by Fintech.

39. Lopez executed Agreements as a condition of his employment and engagements with Fintech, which contained confidentiality and non-disclosure provisions, providing Lopez with knowledge that his access to Fintech's trade secrets was granted to him under circumstances that gave rise to a duty to maintain the secrecy of and limit the use of Fintech's trade secrets.

40. Fintech takes reasonable measures to maintain the secrecy of and protect its trade secrets, including limiting access to them and preventing anyone from accessing such information who is not subject to nondisclosure obligations.

41. Lopez has misappropriated, used, and/or disclosed Fintech's trade secrets within the meaning of the FUTSA for the benefit of his new employer, iControl.

42. Fintech has no adequate remedy at law to protect it from the unlawful and continuing misappropriation, disclosure, or use of its trade secrets by Lopez.

43. As a direct and proximate result of Lopez's misappropriation, disclosure, and use of Fintech's trade secrets in violation of the FUTSA, Fintech has suffered and will continue to suffer immediate and irreparable injury to its business and goodwill. This injury, while substantial, may be difficult to calculate with precision.

44. Fintech has a substantial likelihood of success on the merits of this claim because of Lopez's misappropriation, disclosure and/or use of Fintech's trade secrets.

45. The threat of harm to Fintech in the absence of injunctive relief far outweighs the threat of harm to Lopez if an injunction is granted. Fintech faces substantial but difficult to calculate financial loss, loss of goodwill, and loss of its competitive position in the marketplace, whereas the only "hardship" imposed on Lopez would be to prevent him from reaping any illicit gain or benefit from misappropriation, disclosure, and use of Fintech's trade secrets.

46. The public interest would be served by granting the relief sought in that the public clearly favors preventing persons such as Lopez from profiting from their improper and unlawful conduct.

47. The misappropriation, by Lopez was willful and malicious. Accordingly, Fintech is entitled to an award of exemplary damages.

**WHEREFORE,** Fintech demands judgment against Lopez as follows:

(a) Temporarily and permanently enjoining Lopez from using or disclosing any of Fintech's trade secrets;

(b) Awarding Fintech compensatory and exemplary damages in an amount to be proven at trial;

(c) Awarding Fintech its attorneys' fees and costs and interest; and

(d) Granting such other relief as the Court deems just and proper.

## COUNT III

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

48. Fintech realleges and incorporates herein by reference the allegations contained in Paragraph Nos. 1 through 28 above as if set forth fully herein.

49. Lopez is aware of Fintech's advantageous business relationships with its customers.

50. The actions of Lopez as alleged herein were calculated and designed to impair, impede and damage Fintech's legitimate business interests by unlawful means. Such conduct is without justification and constitutes an unlawful, tortious, wrongful, unfair, intentional malicious interference with Fintech's advantageous business relationships.

51. The conduct of Lopez constitutes a tortious interference with Fintech's advantageous business relationships and, as a result, Fintech is entitled to recover damages, in an amount to be determined at trial.

**WHEREFORE,** Fintech demands judgment against Lopez as follows:

(a) Temporarily and permanently enjoining Lopez from wrongfully interfering with Fintech's advantageous business relationships.

(b)   Awarding Fintech compensatory damages in an amount to be proven at trial;

(c)   Awarding Fintech its attorneys' fees and costs and interest; and

(d)   Granting such other relief as the Court deems just and proper.

## COUNT IV

## VIOLATION OF FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT

52.   Fintech realleges and incorporates hereby by reference the allegations contained in Paragraph Nos. 1 through 28 above as if fully set forth herein.

53.   Lopez, for his own account and on behalf of iControl, engaged in unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of iControl's business.

54.   These unfair methods of competition, unconscionable practices, and unfair and deceptive acts, are prohibited by *Fla. Stat.* § 501.201, the Florida Deceptive & Unfair Trade Practices Act ("FDUTPA").

55.   As a direct and proximate result of Lopez's violations of the FDUTPA, Fintech has suffered and will continue to suffer economic losses and irreparable injuries.

56.   This Court has jurisdiction to enjoin the past, current or future violations of the FDUTPA pursuant to *Fla. Stat.* § 501.211(1), and is authorized to award actual damages for such violations pursuant to *Fla. Stat.* § 501.211(2).

57.   Fintech is also entitled to recover its attorneys' fees incurred in the prosecution of this action, pursuant to *Fla. Stat.* § 501.2105.

**WHEREFORE,** Fintech demands judgment against Lopez as follows:

(a) Temporarily and permanently enjoining Lopez from engaging in unfair method of competition, unconscionable acts or practices and unfair and deceptive acts and practices.

(b) Awarding Fintech compensatory damages in an amount to be proven at trial;

(c) Awarding Fintech its attorneys' fees and costs and interest; and

(d) Granting such other relief as the Court deems just and proper.

### Jury Trial Demanded

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated this 30th day of September, 2015.

Respectfully submitted,

/s/ Richard C. McCrea, Jr.
Richard C. McCrea, Jr.
Florida Bar No. 351539
Email: mccrear@gtlaw.com
Jamie Moore Marcario
Florida Bar No. 0089366
Email: marcarioj@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Boulevard, Suite 1900
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900
*Attorneys for Plaintiff*