**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

FINANCIAL INFORMATION
TECHNOLOGIES, INC.,

    Plaintiff,

v.                                                       CASE NO: 8:15-cv-2784-T-30AEP

MARK LOPEZ,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss Amended Complaint (Dkt. 16) and Plaintiff's Response in opposition (Dkt. 22). The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the motion should be granted in part and denied in part. The motion is granted with respect to Count V, Plaintiff's misleading advertising claim under Fla. Stat. § 817.41. The motion is otherwise denied.

## BACKGROUND

Plaintiff Financial Information Technologies, Inc. ("Fintech") filed the instant action against its former employee/independent contractor Mark Lopez alleging the following claims related to Lopez's actions after he left Fintech: breach of contract; misappropriation of confidential business information and trade secrets in violation of Florida's Uniform Trade Secrets Act ("FUTSA"); tortious interference with business relationships; unfair and deceptive acts in violation of Florida's Deceptive & Unfair Trade Practices Act

("FDUTPA"); misleading advertising in violation of Fla. Stat. § 817.41; injurious falsehood; and unfair competition. Lopez moves to dismiss each claim, except the breach of contract claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The relevant allegations of the amended complaint now follow. Notably, the Court assumes the truth of the allegations at this juncture.

Fintech is the industry leader in providing electronic data, analytics, and payments to the beverage alcohol industry. Fintech provides customized invoice information and electronic payments for distributors of all sizes. Fintech's proprietary electronic funds transfer ("EFT") services produce a cash equivalent for the payment of beer, wine, and spirits, through the use of electronic invoices. Fintech's unique suite of proprietary software systems and data analytics tools enables beverage alcohol distributors to streamline business processes and receive every payment in full and on time.

Fintech's success is dependent on its proprietary softare and data analytics systems, as well as the trusted relationships it has cultivated with its extensive customer base. On average, Fintech processes more than 450,000 invoices each week, representing $21 billion in payments annually. Fintech develops and maintains valuable long-standing business relationships and substantial good will with its customers.

Fintech engages in reasonable efforts to maintain the confidentiality, secrecy, and proprietary nature of its confidential information and trade secrets. Pursuant to Fintech's policies, its employees, independent contractors, and staff must keep its proprietary information confidential.

In January 2000, Fintech hired Lopez as a systems analyst. In that capacity, Lopez's duties and responsibilities included developing and maintaining Fintech's proprietary customer applications, includings its EFT System. Lopez resigned from Fintech in May 2002.

In 2009, Lopez returned to Fintech as a contractor in the sales department. In that capacity, Lopez gained acccess to Fintech's confidential information and trade secrets, including its customer information, business model, pricing structure, and information about Fintech's proprietary software and data analytics applications. As a condition of his employment, Lopez executed a Confidentiality and Non-Compete Agreement and a Consulting Agreement (the "Agreements").

The Agreements define what categories of information Fintech deems confidential. They also contain nondisclosure and confidentiality covenants that preclude Lopez from, among other things, disclosing Fintech's confidential information to third parties and using Fintech's confidential information for any purpose other than to further Fintech's business.

In April 2010, Lopez was appointed Fintech's Vice President of Operations. In that capacity, Lopez's duties and responsibilities included managing the activities of the activation department, overseeing the installation process for new customers, and managing the customer support department. Subsequently, Lopez became manager of the technology department. In those roles, Lopez had access to every aspect of Fintech's confidential information and trade secrets, including its customer information, proprietary software applications, and Fintech's data analytics tools and unique EFT System.

In May 2012, Lopez separated his employment from Fintech. From March 2015 to the present, Lopez has been employed by iControl Systems, USA, LLC, as its Executive Vice President of Operations. iControl was formed in 2005 to provide scan-based trading systems. More recently, with Lopez's assistance, iControl has expanded into the area of EFT payment transactions for the beverage alcohol industry and has begun soliciting Fintech's customers.[1]

Fintech alleges that, in his capacity as Executive Vice President for iControl, Lopez has misappropriated, disclosed, and used for iControl's benefit, Fintech's confidential business information and trade secrets, including Fintech's confidential customer information and Fintech's proprietary EFT System.

According to Fintech, Lopez has also conspired with other iControl employees to disseminate false and disparaging statements in the relevant business community about Fintech to Fintech's customers and prospective customers, including knowingly false statements about the capabilities and pricing structure of Fintech's software solutions and services, for the purpose of interfering with Fintech's advantageous business relationships. These statements include the following: Fintech does not have data integrity or analytics; Fintech does not offer bi-directional data flow commerce; Fintech does not offer customers help with credit and discrepancy reconciliation; Fintech offers only a single solution; and because Fintech does not provide bi-directional data flow commerce, iControl was chosen to be a Board member of the Beer Industry Electronic Commerce Coalition.

---

[1] Fintech considers the identity of its long-standing customers and prospective customers to be confidential and proprietary, subject to disclosure after the Court's entry of a protective order.

Fintech alleges that Lopez's actions violate the Agreements. It further avers that Lopez's actions constitute unfair competition and propose a significant threat of unlawful disclosure and use of Fintech's confidential business information and trade secrets. As a result of Lopez's interference with Fintech's advantageous business relationships, Fintech has suffered economic damages of more than $1.8 million.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). On the contrary, legal conclusions "must be supported by factual allegations." *Id.* Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

### I. Lopez's Argument that the "Single Publication" Rule Precludes Multiple Claims

Lopez argues that Florida's "single publication/single action" rule does not allow multiple actions when they stem from the same defamatory publication or event. *See Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204 (Fla. 4th DCA 2002). Lopez contends that the single publication rule warrants dismissal of Fintech's tortious

interference claim, injurious falsehood and unfair competition claims, as well as its statutory claims arising under FDUTPA and Fla. Stat. § 817.41 because these claims rely on the same set of operative facts.

Lopez's argument is without merit because the single publication/single action rule relates to claims that are based on a *failed* defamation claim. In other words, the rule provides that when a defamation claim is dismissed, the court should also dismiss related tort claims predicated on the same publication. *See Callaway*, 831 So. 2d at 208-09 (noting that if "the defamation claim fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply.") (citations omitted).

Here, Fintech has not alleged a defamation action. And, even if it had, Lopez does not explain how dismissal of such a claim would be warranted. Thus, to the extent Fintech's common law tort claims rely, in part, on a defamatory statement, the single publication rule is inapplicable.[2]

## II.    Lopez's Argument that FUTSA Precludes Other Tort Actions or Remedies

Lopez argues that FUTSA expressly precludes "conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." Fla. Stat. § 688.008(1). Lopez contends that FUTSA essentially preempts all but Fintech's breach of contract claim because the tort claims rely on the same set of facts. This argument, like Lopez's argument about the single publication rule, misses the mark.

---

[2] Notably, Fintech alleges multiple statements, made to multiple customers, at multiple times—each statement is separate and distinct and could potentially support a *separate* cause of action against Lopez.

Although it is true as a general matter that FUTSA preemption applies to other civil remedies that are based upon the same misappropriation of a trade secret, Fintech's other tort claims allege materially distinct facts. For example, Fintech's tortious interference claim relies on the additional allegation that Lopez intentionally and unlawfully interfered with Fintech's business relationships by making false statements about Fintech to persuade Fintech's customers and prospective customers to abandon Fintech. As such, at this juncture, the Court will not dismiss any claims based on FUTSA preemption. However, Lopez may renew this argument at the dispositive motion stage if discovery reveals that the tort claims are essentially premised on the same facts as the FUTSA claim.

### III.   Lopez's Argument that the FUTSA Claim Is Insufficiently Pled

Lopez argues that Fintech's FUTSA claim is insufficient under Rule 12(b)(6). The Court disagrees. Fintech alleges detailed facts that: (1) Fintech possessed confidential and proprietary information and took reasonable steps to protect its secrecy; (2) Lopez misappropriated this secret information and used it for improper means; and (3) Fintech's confidential and proprietary information derives independent economic value from not being generally known or ascertainable through proper means. *See* Fla. Stat. § 688.002.

Contrary to Lopez's contentions, Fintech avers more than just "conclusory allegations" that Lopez had knowledge of and misappropriated Fintech's trade secrets. The amended complaint alleges that, as a Fintech contractor and employee, Lopez had access to every aspect of Fintech's confidential information and trade secrets and, within months of joining iControl, iControl expanded into the area of EFT payment transactions for the beverage alcohol industry and began soliciting Fintech's customers to abandon Fintech and

engage iControl. Accordingly, the motion to dismiss is denied with respect to Fintech's FUTSA claim.

### IV.     Lopez's Argument that the Tortious Interference Claim Is Insufficiently Pled

Lopez argues that the tortious interference claim is insufficient under Rule 12(b)(6). The Court disagrees. A tortious interference claim requires the following elements: (1) the existence of a business relationship; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff as a result of the breach of the relationship. *See Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). Fintech alleges facts in support of these elements; Fintech discusses in detail its long-standing business relationship with numerous customers—notably, Lopez had intimate knowledge of those relationships during his tenure at Fintech. The amended complaint also includes facts describing false statements that were made to Fintech's customers to interfere with their relationship with Fintech. Finally, Fintech alleges facts related to the damages it has suffered as a result of the loss of business. Accordingly, the motion to dismiss is denied with respect to the tortious interference claim.

### V.     Failure to Allege a Consumer Transaction under the FDUTPA

Lopez's only basis for dismissal of the FDUTPA claim is that Fintech failed to allege a "consumer transaction" that constituted an unfair or deceptive act or practice. But, as Fintech points out, Lopez relies on an outdated version of section 501.211. The current version of section 501.211 expands the class of potential claimants, replacing "consumer" with "person." Accordingly, the motion to dismiss is denied with respect to the FDUTPA claim.

**VI.     Failure to Allege a Claim of Misleading Advertising**

Lopez argues that Fintech fails to state a claim of misleading advertising under Fla. Stat. § 817.41. The Court agrees to the extent that it concludes that a claim under section 817.41 is inapplicable under the circumstances of this case.

"A consumer party may state a claim for statutory misleading advertising under Florida law by pleading that the party relied on some identifiable alleged misleading advertising plus, where appropriate, all of the other elements of the common law tort of fraud in the inducement, as follows: (a) the representor made a misrepresentation of a material fact; (b) the representor knew or should have known of the falsity of the statement; (c) the representor intended that the representation would induce another to rely and act on it; and (d) the plaintiff suffered injury in justifiable reliance on the representation." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1322 (M.D. Fla. 2007).

The allegations make clear that Fintech is not a "consumer" that was harmed by any misrepresentation Lopez made to the public. But Fintech argues that a competitor exception applies. Fintech contends that, when a competitor makes false statements to the public and the public relies on them to Fintech's detriment, Fintech may state a claim under section 817.41. In *Third Party Verification*, the court implied that an allegation of competition is permitted to "stand-in" for the element of direct reliance that a consumer is typically obligated to plead. *See id.* at 1322. The Court takes no position on whether the competitor exception applies under Florida law because, even if it is a viable theory, it is inapplicable here because Fintech did not file this claim against iControl, its competitor. As such, the

Court concludes that section 817.41 does not apply under the facts of this case and dismisses this claim with prejudice.

**VII. Fintech's Remaining Claims of Injurious Falsehood and Unfair Competition**

Lopez summarily argues that Fintech's claims of injurious falsehood and unfair competition fail to state a claim because they are too conclusory. The Court disagrees. With respect to the former claim, Fintech alleges detailed facts about the falsehoods Lopez made about Fintech to third parties. Specifically, the amended complaint lists the specific false statements that Lopez made about Fintech's technology and capabilities to Fintech's customers and prospective customers at conferences and trade shows after Lopez joined iControl in March of 2015. Fintech also pleads damages associated with these false statements. *See* S*alit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So. 2d 381, 386 (Fla. 4th DCA 1999) (noting that the "gist of the tort of injurious falsehood is the intentional interference with another's economic relations.") (internal quotations and citations omitted).

With respect to the latter claim, Fintech sufficiently alleges that Lopez engaged in conduct that is contrary to honest practice in industrial and commercial matters. *See Third Party Verification*, 492 F. Supp. 2d at 1325 (noting that "[t]he Florida common law of unfair competition is an umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.") (internal quotations and citations omitted).

Accordingly, Lopez's motion to dismiss is denied with respect to Fintech's claims of injurious falsehood and unfair competition.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss Amended Complaint (Dkt. 16) is granted in part and denied in part. The motion is granted with respect to Count V, Plaintiff's misleading advertising claim under Fla. Stat. § 817.41. The motion is otherwise denied.

2. Count V of Plaintiff's amended complaint is dismissed with prejudice.

3. Defendant shall file an answer to the amended complaint within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on February 19, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies Furnished To:
Counsel/Parties of Record

*S:\Even\2015\15-cv-2784.mtdismiss-16-deny.wpd*